22-204
Killoran v. Westhampton Beach School District

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of July, two thousand twenty-three.

PRESENT:
> MYRNA PÉREZ,
> ALISON J. NATHAN,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

_____

Christian Killoran,

*Plaintiff-Appellant,*

Terrie Killoran, individually and on behalf of their son, A.K., a minor,

*Plaintiff,*

v.                                                              No. 22-204

Westhampton Beach School District, Michael Radday, individually and in his official capacity as Superintendent, Suzanne M. Mensch, Halsey C. Stevens, Stacy Rubio, Claire Bean, James N. Hulme, Joyce Donnesson, George R. Kast, Jr., Individually and Collectively as Board of Education Members,

*Defendants-Appellees.*

| | |
|---|---|
| **FOR PLAINTIFF-APPELLANT:** | CHRISTIAN KILLORAN, pro se, Killoran Law P.C., Westhampton Beach, NY. |
| **FOR DEFENDANTS-APPELLEES:** | SCOTT J. KREPPEIN, Devitt Spellman Barrett, LLP, Smithtown, NY, Anne C. Leahey, Anne Leahey Law, LLC, Huntington, NY. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Brown, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

This is one of three appeals related to a long-running dispute between Plaintiff-Appellant Christian Killoran ("Plaintiff") and the Westhampton Beach School District ("Westhampton") over the education of Plaintiff's son, A.K, a young man who has Down syndrome.[1]

Plaintiff, on behalf of A.K., appeals from a judgment entered on January 28, 2022 by the United States District Court of the Eastern District of New York (Brown, *J.*), awarding summary judgment in favor of Defendants-Appellees, Westhampton and various Westhampton officials and Board of Education members in their individual and official capacities (collectively, "Defendants"), on Plaintiff's claims under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794 *et seq.*

---

[1] *See Killoran v. Westhampton Beach UFSD*, 21-2647 (2d Cir.); *Killoran v. Westhampton Beach Sch. Dist.*, No. 22-1753 (2d Cir.).

In awarding summary judgment, the district court concluded that Plaintiff failed to assert a prima facie claim under the ADA or the Rehabilitation Act. It also upheld the decision of a State Review Officer ("SRO") affirming the findings of an Impartial Hearing Officer ("IHO") who rejected Plaintiff's challenge to the Individualized Education Plans ("IEPs") developed for A.K. for the 2016–2017 and 2017–2018 school years. The SRO primarily concluded that A.K.'s two IEPs, which recommended out-of-district placements, were reasonably calculated to provide A.K. a free appropriate public education ("FAPE") in the least restrictive environment ("LRE"). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, which we reference only as necessary to explain our decision to affirm.[2]

## I.      Standard of Review

This Court reviews a district court's award of summary judgment de novo. *See McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). Summary judgment is warranted only where, construing the evidence in the light most favorable to the non-movant, and drawing all reasonable inferences in that party's favor, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also McBride*, 583 F.3d at 96. "A fact is 'material' . . . if it 'might affect the outcome of the suit under the governing law,'" and an issue is "'genuine' if 'the evidence is such that a reasonable

---

[2] At the outset, we resolve Defendants' motion to strike, which challenges our jurisdiction, Plaintiff's standing to represent his son, and the sufficiency of Plaintiff's briefs and appendix. The motion is **DENIED**. Defendants argue that the notice of appeal improperly designated an order rather than a judgment, but a notice of appeal must "designate the judgment—*or the appealable order*—from which the appeal is taken." Fed. R. App. P. 3(c)(1)(B) (emphasis added). Further, "[a]n appeal must not be dismissed . . . for failure to properly designate the judgment if the notice of appeal was filed after entry of the judgment and designates an order that merged into that judgment." Fed. R. App. P. 3(c)(7). As to Plaintiff's standing to represent his son, Plaintiff is an attorney who was admitted pro hac vice in *Killoran v. Westhampton Beach UFSD*, 21-2647 (2d Cir.), and we perceive no issue with his standing in the instant case. While Defendants correctly identify extensive deficiencies with Plaintiff's briefing and appendix, we exercise our discretion at this late date to resolve this appeal and its companions on the merits. *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 133 (2d Cir. 2004).

jury could return a verdict for the nonmoving party.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"In a district court proceeding under the IDEA, the parties and the court typically style the decision as a ruling on a motion for summary judgment, but 'the procedure is in substance an appeal from an administrative determination, not a summary judgment motion.'" *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021) (quoting *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012)). The district court must conduct "an independent review of the administrative record and make a determination based on a 'preponderance of the evidence,'" but "the role of the federal courts in reviewing state educational decisions under the IDEA is 'circumscribed.'" *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007) (quoting *Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1120 (2d Cir. 1997); *Muller v. Comm. on Special Educ.*, 145 F.3d 95, 101 (2d Cir. 1998)). The review "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982). Courts "'defer to the final decision of the state authorities,' even where 'the reviewing authority disagrees with the hearing officer,'" *A.C. ex rel. M.C. v. Bd. of Educ. of Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009) (quoting *Karl ex rel. Karl v. Bd. of Educ. of Geneseo Cent. Sch. Dist.*, 736 F.2d 873, 877 (1984)), and "[d]eference is particularly appropriate when . . . the state hearing officers' review has been thorough and careful," *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998).

**II.     Discussion**

**A.  ADA and Rehabilitation Act Discrimination Claims**

Plaintiff argues that Defendants discriminated against A.K. on account of his disability, in

violation of the ADA and the Rehabilitation Act, by failing to enroll A.K. for the 2015–2016 school year and by failing to place him for the 2016-2017 school year. These arguments are unavailing because Plaintiff does not assert a prima facie claim under either statute.

Though there are "subtle differences" between the ADA and the Rehabilitation Act, we generally "treat claims under the two statutes identically," applying the same standards to both. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (citation and internal quotation marks omitted). To make a claim under either statute, Plaintiff must show that (1) A.K. "is a qualified individual with a disability"; (2) Defendants are "subject to one of the Acts"; and (3) A.K. "was denied the opportunity to participate in or benefit from [Defendants'] services, programs, or activities, or was otherwise discriminated against by the [Defendants] because of his disability." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

"Under both statutes, a defendant discriminates when it fails to make a reasonable accommodation that would permit a qualified disabled individual to have access to and take a meaningful part in public services." *Id.* at 640 (citation and internal quotation marks omitted). "A plaintiff alleging that he was denied a reasonable accommodation bears the burdens of both production and persuasion as to the existence of some accommodation that would allow him to meet the essential eligibility requirements of the service, program, or activity at issue." *Id.* at 642.

As an initial matter, Plaintiff fails to adduce sufficient evidence that A.K. was discriminated against due to his disability. In support of his claims, Plaintiff primarily points to a previous IHO's decision concluding that Defendants failed to provide A.K. a FAPE for the 2015–2016 and 2016–2017 school years. Evidence of an IDEA violation, without more, however, is insufficient to demonstrate a violation under either Act. *See Wenger v. Canastota Cent. Sch. Dist.*, 979 F. Supp. 147, 152 (N.D.N.Y. 1997), *aff'd mem.*, 208 F.3d 204 (2d Cir. 2000) ("[S]omething

5

more than a mere violation of the IDEA is necessary in order to show a violation of Section 504 in the context of educating children with disabilities . . . .").

Regardless, Plaintiff also does not, as he must, show that his proposed accommodation—A.K.'s placement in Westhampton Beach Middle School—was reasonable. Plaintiff concedes that implementing A.K.'s IEP, as he envisioned, was not possible in an existing program in Westhampton Beach Middle School. But he does not provide non-conclusory evidence that A.K.'s placement at Westhampton Beach Middle School in a newly developed program or in a mainstreamed classroom was possible, let alone reasonable. *See McBride*, 583 F.3d at 100 ("[T]he ADA imposes liability for, *inter alia*, discriminatory refusal to undertake a feasible accommodation, not mere refusal to explore possible accommodations where, in the end, no accommodation was possible."). This is not enough to defeat summary judgment. *See Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) ("Genuine issues of fact are not created by conclusory allegations."); *cf. Jackan v. N.Y. State Dep't of Lab.*, 205 F.3d 562, 566 (2d Cir. 2000) ("The burden of persuasion on the existence of an effective accommodation is not satisfied by mere speculation." (internal quotation marks omitted)).

**B. IDEA Claims**

On appeal, Plaintiff principally argues that A.K.'s IEPs violated the LRE requirement of the IDEA by failing to recommend in-district placements. Because the IDEA does not require a district to develop an in-district placement for one child and the out-of-district placements offered to A.K. satisfied the LRE requirement, Plaintiff's IDEA claims are unavailing.

"In determining whether an IEP complies with the IDEA, courts make a two-part inquiry that is, first, procedural, and second, substantive." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189–90 (2d Cir. 2012). Here, Plaintiff does not allege any procedural violations. Accordingly,

6

our analysis focuses on the second part of the inquiry. At the second step, "[c]ourts . . . examine whether the IEP was substantively adequate, namely, whether it was reasonably calculated to enable the child to receive educational benefits." *Id.* at 190 (alterations, citations, and internal quotation marks omitted). "In determining the substantive adequacy of the IEP, we must . . . consider whether the state complied with the IDEA's LRE requirement by educating the child, to the maximum extent appropriate, with children who are not disabled." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 160 (2d Cir. 2014).

Plaintiff argues, entirely without supporting case law, that under the IDEA's LRE requirement, a district must analyze whether it could create a placement for a child in the district before recommending an out-of-district placement. We are unpersuaded. Though a school district "must consider an appropriate continuum of alternative placements" and "offer the disabled student the least restrictive placement from that continuum that is appropriate for his or her needs," it "need not itself operate all of the different educational programs." *Id.* at 165. The school district "may instead include free public placements at educational programs operated by other entities, including other public agencies or private schools." *Id.* Here, the record reflects that in developing A.K.'s IEPs, the various Committees on Special Education ("CSEs") considered several placement options, including placement in Westhampton Beach Middle School, and concluded that placement in an out-of-district special class[3] was most appropriate for A.K.'s needs.

Plaintiff also argues that the placements proposed in the IEPs were not the LRE and thus violated the IDEA. We disagree. To determine whether a student's placement is the LRE, we apply the test articulated in *P. ex rel. Mr. And Mrs. P. v. Newington Bd. of Educ.*, which instructs

---

[3] Under New York law, a "[s]pecial class means a class consisting of students with disabilities who have been grouped together because of similar individual needs for the purpose of being provided specially designed instruction . . ." N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1(uu).

us to consider (1) "whether education in the regular classroom, with the use of supplemental aids and services, can be achieved satisfactorily for a given child," and (2) "if not, then whether the school has mainstreamed the child to the maximum extent appropriate." 546 F.3d 111, 120 (2d Cir. 2008) (citation and internal quotation marks omitted). Here, Plaintiff contends that the LRE was Westhampton Beach Middle School. The record does not support this claim. As discussed above, Westhampton did not have a special class suited to A.K.'s needs, nor does the law require it to create one. Moreover, Plaintiff does not dispute that A.K. scored at or below the first percentile in reading comprehension, spelling, listening comprehension, and mathematics; in the low range in single-word reading and in the low average range in pseudo-word decoding; and below the first percentile in speech-language skills. In light of A.K.'s unique needs, we agree with the SRO's well-reasoned conclusion that educating A.K. in a regular classroom could not be satisfactorily achieved even with the use of supplemental aids and services. As to the second prong of the test, we again agree with the SRO's conclusion that the IEPs mainstreamed A.K. to the maximum extent possible. Both IEPs recommended that A.K. be placed in an out-of-district general education school so that he could attend nonacademic activities, like extracurricular activities, electives, and lunch, with his general education peers. Accordingly, we conclude that A.K.'s IEPs satisfied the IDEA's LRE requirement.

We have considered all of Plaintiff's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8